## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| Anastasia Kurtz, *on behalf of herself and all others similarly situated,* | : |
| Plaintiff, | : |
| vs. | : Civil Action No.: |
| Nutricost, | : |
| Defendant. | : |

For this Class Action Complaint, Plaintiff Anastasia Kurtz, by undersigned counsel, states as follows:

### INTRODUCTION

1.    Defendant Nutricost ("Defendant" or "Nutricost") formulated, manufactured, advertised and sold magnesium dietary supplements throughout the United States that purport to contain 420 mg of "Magnesium Glycinate" per one serving.

2.    However, it is impossible to fit 420 mg of magnesium derived from magnesium glycinate in two of the sized capsules Nutricost uses for a single serving; magnesium glycinate simply possesses far too low a concentration of magnesium to do so.   Other forms of magnesium containing powder – such as magnesium oxide, which is often used to treat constipation, indigestion and other digestive symptoms – contain higher percentages of magnesium and thus could fit within the capsule and deliver 420 mg of magnesium per serving, but not magnesium glycinate.

3.    Nutricost prominently displays the total magnesium glycinate contents of its supplements (the "Magnesium Glycinate Supplements" or the "Supplements") – purportedly 420

mg of "Magnesium Glycinate" per a serving of 2 capsules, or 210 mg per capsule – on the front and back of each product's label.

4.     But the Magnesium Glycinate Supplements do not contain 420 mg of magnesium glycinate in a 2-capsule serving and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels.   Instead, the Supplements contain significantly less magnesium glycinate than what is claimed and displayed or zero magnesium derived from magnesium glycinate. As set forth below, it is physically impossible for the capsules Defendant uses for its Magnesium Glycinate Supplements to contain the amount of claimed magnesium glycinate.   In misstating the actual magnesium content of the Supplements, Nutricost violates federal law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling.   Defendant's prominent misrepresentations regarding its Magnesium Glycinate Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

## PARTIES

5.     Plaintiff Anastasia Kurtz ("Plaintiff" or "Ms. Kurtz") is and at all times relevant hereto was an adult individual residing in Bowling Green, Ohio.   Ms. Kurtz has purchased Nutricost's "Magnesium Glycinate Supplements" within the last four years, including from Walmart's online store on April 24, 2023.   When Plaintiff purchased the Supplements, they were delivered to Ms. Kurtz's Bowling Green, Ohio residence.   Ms. Kurtz viewed the front and back label of Defendant's Magnesium Glycinate Supplements on each occasion that she purchased the product during the Class Period.

6.     Defendant Nutricost ("Nutricost" or "Defendant") is a Utah business entity with a principal place of business at 351 E 1750 N Vineyard, Utah 84059. From its Utah headquarters

2

Nutricost markets, advertises, distributes and sells its Supplements throughout the United States.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) during the Class Period Nutricost sold its Magnesium Glycinate Supplements to more than 100 people, (2) in the same period those sales, combined with Plaintiff's requested injunctive relief, punitive damages and attorneys' fees, exceeds $5,000,000, and (iii) there is minimal diversity because Plaintiff and Class Members, and Defendant are citizens of different states.

8.     Venue is proper in this District and this Court has specific personal jurisdiction over Nutricost because the acts that gives rise to Plaintiff's claims, including her purchase of the Magnesium Glycinate Supplements, occurred within this District.

## FACTUAL ALLEGATIONS

### a. Defendant misrepresents that one capsule of the Magnesium Glycinate Supplements contains 210 mg of magnesium derived from magnesium glycinate

9.     The amount and type of magnesium contained within Defendant's Magnesium Glycinate Supplements is material to any consumer seeking to purchase a Magnesium Glycinate Supplements.

10.     Defendant purports to sell its Supplements in the form of magnesium glycinate, which is known as a highly absorbable form of magnesium.

11.     Nutricost labeled and advertised its Magnesium Glycinate Supplements in a manner that highlights the amount of magnesium as magnesium glycinate contained within.  Nutricost lists the alleged magnesium glycinate content on the front label of the Supplements as well as on the back nutritional label. Such representations constitute an express warranty regarding the

3

Magnesium Glycinate Supplements' magnesium content.

12.     Indeed, as set forth in the below images, "Magnesium Glycinate" is prominently displayed on the front label in font larger and offset from the other text on the label and the front label notes that there is "420 MG Per Serving."



13.     Moreover, the Supplement Facts on the back label states the active ingredient is

"Magnesium (as Magnesium Glycinate)," there are 2 capsules per serving and there is 420 mg in:



14.     Upon information and belief, Nutricost labeled its Magnesium Glycinate Supplements in a materially identical manner throughout the Class Period, stating that a serving of two capsules of the Supplement contains 420 mg of magnesium glycinate.

15.     As set forth in the above images, the Magnesium Glycinate Supplements labels claim that there is 420 mg magnesium glycinate across a serving size of two capsules derived from magnesium glycinate.

16.     The Supplement Facts, which are required to declare the amount of magnesium, note that 2 capsules of Defendant's Magnesium Glycinate Supplements, which constitutes the recommended serving size, contains "420 mg" of "Magnesium (as magnesium glycinate)." *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/ (the U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound.") (last visited June 10, 2024).

17.     The Supplement Facts also note that the listed 420 mg of magnesium derived from magnesium glycinate constitutes 100% of the recommended Daily Value of magnesium.   Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium, the recommended Daily Value for adults and children over four years is 420 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv).

***b. Given the size of the capsules and the amount of magnesium contained within magnesium glycinate, it is impossible for two capsules of the Magnesium Glycinate Supplements to contain 420 mg of magnesium glycinate***

18.     Defendant's representations during the Cass Period are false and misleading.

19.     It is impossible for two capsules of Defendant's Magnesium Glycinate Supplements to contain the advertised and warranted 420 mg of magnesium as magnesium glycinate in light of (1) the amount of magnesium contained in magnesium glycinate and (2) the maximum capacity of the capsules Defendant uses for its Magnesium Glycinate Supplements.

20.     First, Defendant uses size 00 capsules for its Magnesium Glycinate Supplements. While the amount of powder a capsule can contain may vary based on the density of the powder contained therein, size 00 capsules hold approximately 735 mg of powder.[1] On the highest end of the density spectrum, a size 00 capsule can contain 1,092 mg of powder with a density of 1.2 g/ml; on the other end of the spectrum, size 00 capsules can fit up to 546 mg of powder with a density of 0.6 g/ml.[2]

21.     Second, magnesium glycinate contains only 14.1% magnesium by mass.[3] Accordingly, approximately 3,000 mg of magnesium glycinate is needed to obtain 420 mg of magnesium.

22.     Yet as set forth above, the two (2) size 00 capsules Defendant uses for a recommended serving of its Magnesium Glycinate Supplements cannot physically fit 3,000 mg of powder regardless of its density.

23.     Therefore, *even if* the only ingredient in the Magnesium Glycinate Supplements

---

[1] *See, e.g.,* https://capsuleconnection.com/capsule-sizing-info/ (last visited June 10, 2024).

[2] *See id.*

[3] *See, e.g.,* https://en.wikipedia.org/wiki/Magnesium_glycinate (last visited June 10, 2024).

were magnesium glycinate and regardless of its density, there is necessarily less than 420 mg of magnesium glycinate in two (2) capsules of Defendant's Supplement.[4]

24.     However, in addition to magnesium glycinate, each capsule of the Magnesium Glycinate Supplements also contains "stearic acid, magnesium stearate (vegetable source), [and] silica" which further lowers the amount of magnesium as magnesium glycinate that can be contained within the capsules that Defendant uses for it Supplements.

25.     In light of the foregoing, Defendant's representations that two capsules of the Magnesium Glycinate Supplements contains 420 mg of magnesium as magnesium glycinate is false.

26.     Thus, to the extent that the Supplements contain some form of magnesium, such magnesium is not derived from magnesium glycinate and instead must come from an alternative, undisclosed source of magnesium.   For instance, the magnesium may be derived from magnesium oxide, which contains a higher percentage of elemental magnesium than magnesium glycinate but which is less desirable to consumers because, *inter alia*, it is not absorbed by the body as well as magnesium glycinate and therefore is less desirable to those consumers who seek to raise their magnesium levels.

27.     Defendant knew at all relevant times that its Supplements did not contain the claimed amount of magnesium glycinate.   For instance, Defendant received complaints from

---

[4] For instance, if the magnesium glycinate contained a high density of 1.2 g/ml, 1,092 mg of magnesium glycinate would fit within one size 00 capsule, containing approximately 154 mg of magnesium. On the other end of the spectrum, if the magnesium glycinate had a density of 0.6 g/ml, 546 mg would fit within one size 00 capsule, containing approximately 77mg of magnesium. In both instances, significantly less than 420 mg of magnesium derived from magnesium glycinate can fit within two (2) size 00 capsules.

consumers that its products did not contain the stated amount of magnesium glycinate and resulted in side effects (*e.g.,* diarrhea, nausea, stomach aches) that are consistent with other sources of magnesium such as magnesium oxide.[5]  In addition, Defendant's employees are knowledgeable about the amount of magnesium contained within magnesium glycinate and knew that it was impossible for two capsules of Defendant's Supplements to contain 420 mg of magnesium from magnesium glycinate.

### c. *After Plaintiff purchased the Supplements, Defendant was sued about its false labeling and thereafter changed its labels, acknowledging previously undisclosed magnesium oxide*

28.    On August 25, 2023 – after Plaintiff purchased the Supplements – Dalit Cohen, a New York purchaser of Defendant's Supplements, filed a lawsuit against Nutricost in the United States District Court for the Eastern District of New York. *Cohen v. Nutricost*; Case No: 2:23-cv-

---

[5] See the following representative reviews of the Supplements on Defendant's website:

- "I have taken 400-500mg of magnesium glycinate for probably ten years for sleep and I t DOES NOT create diarrhea. This product does so it cannot be magnesium glycinate. It is acting exactly like magnesium citrate. I have stopped taking it three times and restarted and horrible diarrhea results each time I restart it. DO NOT PURCHASE THIS IF YOU ARE LOOKING FOR MAGNESIUM GLYCINATE FOR SLEEP THAT DOES NOT CREATE DIARRHEA!! This product should be removed from Amazon";

- "I took one pill and got the worst stomach ache I've ever had. Puked all night. Idk if it was just me, but beware."

- "I have been treating myself successfully for multiple sclerosis for over 18 years. I take certain supplements as part of my regimen. Magnesium glycinate is one off these. Two weeks ago I switched to this brand. The side effects which I have never experienced with any other brand were insomnia, anxiety, IBS, and a general feeling of unwellness. As soon as I stopped the side effects dissipated. I don't know what this is, but it's not magnesium glycinate";

https://nutricost.com/products/nutricost-magnesium-glycinate-120-caps (last visited July 17, 2023).

06387-NJC-AYS (S.D.N.Y. Aug. 25, 2023) (ECF No. 1).   Ms. Cohen sued Nutricost for the same

misrepresentations at issue in this case.

29.     After Ms. Cohen filed her lawsuit, Defendant re-named the Supplements to

"Magnesium + Extra-Strength" and changed the labeling on its Supplements to belatedly disclose

for the first time that the Supplements contain magnesium from magnesium oxide in addition to

magnesium glycinate; magnesium oxide is listed as the primary source of magnesium:[6]



30.     Repeat consumers who viewed the Supplements' 'corrected' labels immediately

noted the change and registered their confusion.  For instance, many consumers believed the

falsehood that the Supplements had contained 100% magnesium from magnesium glycinate and

are upset about the Supplements' "new formula" containing lower quality, less-absorbable

magnesium oxide. They state they will not purchase the Supplements now that the concealed

magnesium oxide has been disclosed. Unbeknownst to them, however, is that the Supplements

---

[6] *See* https://nutricost.com/products/nutricost-magnesium-extra-strength (last visited June 10,
2024).

were always of lower quality magnesium oxide; Nutricost just misrepresented that fact until it was

sued. *See, e.g.*:

- "This product use to be 100% magnesium glycinate, which is what you want and what you are paying for. They have now changed the ingredients. The number one ingredient is now magnesium oxide, which is cheap, poorly absorbed, and does not carry the benefits of glycinate." (Amazon; Dec. 22, 2023);

- "Uh oh. This product used to be pure Magnesium Glycinate. I've been buying it for more than a year. I reordered what I ordered before, and see that the label has changed. Now it says "Magnesium+ Extra Strength". On the ingredients list it still says "420 mg per serving", but now the product contains "Magnesium Oxide and Magnesium Glycinate" (and no stipulation as to how much of each). With that wording it could be 95% Magnesium Oxide and 10% Glycinate, or it could be the reverse - we'll never know. I think this is a cost savings measure, because this is the cheapest form of Magnesium - from what I understand only about 10% of Magnesium Oxide is absorbed by the body. Why in the world are they labeling it "Magnesium+" and "Extra Strength" when it is less bioavailable than it was before? I'll use it up because I can't return it, unless I have problems getting to sleep. In any case I won't be buying this again and will probably go with the company's Magnesium Glycinate powder - at least they haven't reformulated it (yet)." (Amazon; Dec. 22, 2023);

- "Buyer Beware:

  I used to buy this product but they recently (sneakily) changed the formula to include Magnesium Oxide in place of much of the Magnesium Glycinate, which is why I'm assuming they no longer call it "Magnesium Glycinate", with the new name being "Magnesium+", which defeats the purpose, as Magnesium Oxide and Glycinate are used for completely different things since they're absorbed differently.

  It's deceptive because my Amazon purchases show this as being previously bought by me, so when I reordered it, I was surprised to see the formula changed, and not for the better. I'm assuming this is a cost-cutting measure. I buy their other supplements as well, but now I need to reconsider those as well." (Amazon; Dec. 17, 2023);

- "I ordered this as Magnesium Glycinate, and was shocked to see that the brand and type I had bought for two years is now Magnesium Oxide with an unknown quantity of Magnesium Glycinate, Oxide is cheap and doesn't absorb well. Glycinate is the gold standard and expensive. I'm sure that there is very little Magnesium Glycinate in it now. How deceptive! My doctor specified to NOT take Magnesium Oxide, and here I inadvertently ended up with Mag. Oxide. I called to complain, and have obtained a refund. I won't be buying anything in this brand again." (Amazon; Dec.

13, 2023);

- "No longer 100% magnesium glycinate. Do not buy this. A bunch of cheap filler has been added." (Amazon; Dec. 12, 2023);

- "No longer just magnesium glycinate. They re-branded calling it Magnesium+ adding cheap magnesium oxide. I had been purchasing this as soon as the previous bottle ended so I didn't expect this change. Not even so much as a heads up. Will not be buying this again." (Amazon; Dec. 11, 2023);

- "These used to be Magnesium Glycinate, but now they silently changed the ingredients to a proprietary blend of Magnesium Oxide and Glycinate - and we all know what that means. It's going to be 99% of the cheap, least absorbable Oxide form and 1% of the more expensive but desirable glycinate form.
  Very disappointing and honestly scamming consumers that, like me, have gotten in the habit of simply reordering supplements like this that once used to be solid but then after they accumulated enough reviews and recurring customers they silently change the formula.

  I would have expected better by Nutricost. Won't be buying again and will recommend all my clients to stop using this product as well." (Amazon; Dec. 11, 2023).[7]

31.     Retailers such as Target continued to display the original, false labels on their website until approximately March 2024.

32.     While Defendant changed its false labels in late 2023 in response to being sued, it has not agreed to or provided any compensation, restitution or any other monetary damages to purchasers of the misbranded magnesium glycinate products, including Plaintiff and class members.

### d.   Defendant's labeling and misrepresentations are false, misleading and illegal

33.     The above misrepresentations regarding the contents and ingredients of

---

[7] https://www.amazon.com/Nutricost-Magnesium-Glycinate-420mg-Capsules/dp/B08VW9496D/ref=asc_df_B08VW9496D/?tag=hyprod-20&linkCode=df0&hvadid=666664521976&hvpos=&hvnetw=g&hvrand=12509794903190189455&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9003452&hvtargid=pla-2187750940706&mcid=40288ea95bbd3b28bb6e555d5ac8684b&th=1 (last visited June 10, 2024).

Defendant's Magnesium Glycinate Supplements are unlawful under both state and federal law. The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).   In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

34.   Nutricost's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Glycinate Supplements' labels in accordance with these federal regulations.

35.   Ohio likewise prohibits the misbranding of food in a way that parallels the FDCA, deeming food misbranded if "[i]ts labeling is false or misleading in any particular." Ohio Rev. Code Ann. § 3715.60(A).

36.   Nutricost's representations regarding the magnesium contents of its Magnesium Glycinate Supplements – including its representation that there are 420 mg of magnesium derived from magnesium glycinate in two (2) capsules – are material. Reasonable consumers of Magnesium Glycinate Supplements base their purchasing decisions on the advertised and warranted amount of magnesium contain therein and the source from which such magnesium is derived.   Consumer specifically prize magnesium derived from magnesium glycinate over other sources of magnesium.   Additionally, consumers reasonably rely of Defendant's label to

accurately determine the identity, amount and source of any dietary ingredients included within the Defendant's Magnesium Glycinate Supplements. Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Glycinate Supplements' magnesium contents.

37.     Further, such misrepresentations also breach Defendant's express warranty that each serving of the Magnesium Glycinate Supplements contains 420 mg of magnesium glycinate.

38.     The difference between the Magnesium Glycinate Supplements promised and the products sold is significant and material because the sold products do not contain 420 mg of magnesium derived from magnesium glycinate per serving of two (2) capsules. The amount and source of actual magnesium provided, and the measure of magnesium per serving/capsule, has real impacts on the benefits provided to consumers by the Magnesium Glycinate Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium glycinate are left to ingest less magnesium as magnesium glycinate than Defendant states will be provided, and are left to ingest magnesium that is derived from sources of magnesium that are inferior and less desirable than the magnesium glycinate promised by the Defendant.

39.     Because Plaintiff and Class Members purchased a product that contains less magnesium as magnesium glycinate than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature and composition  of the magnesium content of the Magnesium Glycinate Supplements, they would

not have purchased such Products, or would have only paid for the magnesium as magnesium glycinate actually delivered with the Supplements.

40.     On May 16, 2024, prior to initiating this action, Plaintiff's counsel sent a demand letter to Nutricost on behalf of Plaintiff stating, *inter alia,* (1) that Nutricost mislabels and falsely misrepresents the contents of its Magnesium Glycinate Supplements and the Supplements contain less magnesium as magnesium glycinate than advertised in light of the amount of magnesium glycinate that can be contained within the size 00 capsules Defendant uses for its Supplements; (2) alleged that Nutricost breached its written and implied warranties and violated, inter alia, the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*., and the Magnuson-Moss Warranty Act; (3) alleged that Ms. Kurtz and similarly situated consumers had been harmed and injured because they were misled into purchasing Nutricost's Magnesium Glycinate Supplements and would have paid significantly less for or not purchased the supplements had they known about the true magnesium content of the supplements; and (4) demanded that Nutricost "immediately cease the above unlawful practices, cease mislabeling and misbranding Nutricost's Magnesium Glycinate supplements, and provide Ms. Kurtz and all others similarly situated full restitution, damages and punitive damages to the fullest extent permitted by law."

**CLASS ACTION ALLEGATIONS**

### A.  The Class

41.     Plaintiff brings this action on her own behalf and on behalf of the following Class of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

> All persons in the state of Ohio to who purchased Defendant's Magnesium Glycinate Supplements or similarly labeled products during the four-year period preceding the filing of the complaint.

42.     Any legal entity, Defendant and its employees or agents are excluded from the

Class.

**B.  Numerosity**

43.  Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, Plaintiff believes, and on that basis alleges, that Nutricost has sold its Magnesium Glycinate Supplements to thousands of Ohio purchasers during the Class Period.

**C.  Common Questions of Law and Fact**

44.  There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.   These questions include:

a.  Whether Defendant labels, markets and otherwise advertises its Magnesium Glycinate Supplements in a deceptive, false, or misleading manner by misstating the product's magnesium content;

b.  Whether Defendant's sale of the Magnesium Glycinate Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices including: whether Defendant misrepresents the source, sponsorship, approval, or certification of their Magnesium Glycinate Supplements; whether Defendant misrepresents that the Magnesium Glycinate Supplements have benefits which they do not have; whether Defendant represents that the Magnesium Glycinate Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Glycinate Supplements with intent not to sell them as advertised;

c.  Whether Defendant's sale of the Magnesium Glycinate Supplements constitutes false, misleading and deceptive advertising;

d.   Whether Defendant's sale of the Magnesium Glycinate Supplements violates the

Ohio Consumer Sales Practices Act;

e.    Whether Defendant's sale of the Magnesium Glycinate Supplements constitutes a breach of warranty;

f.    Whether Defendant concealed material facts concerning the Magnesium Glycinate Supplements;

g.    Whether Defendant engaged in unconscionable commercial practices in failing to disclose material information concerning the Magnesium Glycinate Supplements;

h.    The nature and extent of damages, restitution, equitable remedies, and other relief to which Plaintiff and the Class are entitled; and

i.    Whether Plaintiff and the Classes should be awarded attorneys' fees and the costs of suit.

### D.    Typicality

45.    The Plaintiff's claims are typical of the claims of the Classes since Plaintiff purchased the Magnesium Glycinate Supplements within the last four years, as did each member of the Class.  Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

### E.    Protecting the Interests of the Class Members

46.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

**F.** **Proceeding Via Class Action is Superior and Advisable**

47.     A class action is the superior method for the fair and efficient adjudication of this controversy.   The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.   It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.   Even if the members of the Class could afford such individual litigation, the court system could not.   Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

48.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Fraudulent Concealment**
**(Plaintiff On behalf of the Ohio Class)**

49.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

50.     By failing to disclose and concealing the contents of the Magnesium Glycinate Supplements from Plaintiff and Class Members (i.e., the Magnesium Glycinate Supplements do not include the amount of magnesium derived from magnesium glycinate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Glycinate Supplements.

18

51.     Defendant knew or should have known that the Magnesium Glycinate Supplements did not contain the amount of magnesium as magnesium glycinate advertised and warranted and were not suitable for their intended use.

52.     Defendant was under a duty to Plaintiff and Class Members to disclose and/or not misrepresent the contents of the Magnesium Glycinate Supplements because:

   a.     Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Glycinate Supplements, including the type of magnesium Defendant included in the Supplements;

   b.     Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Magnesium Glycinate Supplements do not contain the amount of magnesium as magnesium glycinate advertised and warranted; and,

   c.     Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Glycinate Supplements.

53.     On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Glycinate Supplements.

54.     The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Glycinate Supplements.

55.     Plaintiff and the Classes relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Glycinate Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this

information.

56.     By failing to disclose the true contents of the Magnesium Glycinate Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

57.     Had Plaintiff and other Class Members known that Magnesium Glycinate Supplements did not contain the amount of advertised and warranted magnesium as magnesium glycinate, they would not have purchased the Magnesium Glycinate Supplements or would have paid less for them.

58.     As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

59.     Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

60.     Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

61.     Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchases of falsely advertised and misbranded Magnesium Glycinate Supplements.  Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving Magnesium Glycinate Supplements of the quality, nature, fitness, or value that had been

represented by Defendant, and that a reasonable consumer would expect.

62.     Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Glycinate Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty Pursuant to O.R.C. § 1302.26, *et seq.***
**(Plaintiff Kurtz On Behalf of the Ohio Class)**

63.     Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

64.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Glycinate Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Glycinate Supplements regarding the products' magnesium content, and specifically that one serving of the product contains 420 mg of magnesium as magnesium glycinate.

65.     The Magnesium Glycinate Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

66.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

67.     Defendant breached the terms of this contract, including the express warranties,

with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium as magnesium glycinate, as alleged above.

68.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Glycinate Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

**THIRD CAUSE OF ACTION**
**Violations of the Ohio Consumer Sales Practices Act,**
**Ohio Rev. Code §§ 1345.01, et seq.**
**(Plaintiff Kurtz On Behalf of the Ohio Class)**

69.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70.     Plaintiff and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA").

71.     Defendant is a "supplier" as defined by the OCSPA.

72.     Plaintiff's and the other Ohio Class members' purchases of Defendant's Supplements were "consumer transactions" as defined by the OCSPA.

73.     The allegations set forth herein constitute unfair, false, misleading, or deceptive trade acts or practices which are prohibited by the OCSPA.

74.     Ohio provides that that food misbranded if "[i]ts labeling is false or misleading in any particular." Ohio Rev. Code Ann. § 3715.60(A).

75.     At all material times, Defendant engaged in a scheme of offering the Magnesium Glycinate Supplements for sale to Plaintiff, and other members of the Class by way of, inter alia,

commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

76. These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Glycinate Supplements as alleged herein. Such advertisements and inducements appear on the labels of Defendant's Magnesium Glycinate Supplements and Defendant's website.

77. Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Glycinate Supplements' magnesium content, and specifically the amount of magnesium as magnesium glycinate, were false, misleading and/or deceptive.

78. Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiff and members of the Class, were among the intended targets of such representations.

79. The above acts of Defendant, in disseminating said misleading and deceptive statements to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Glycinate Supplements, including the true source and amount of magnesium, and constitute unfair and deceptive acts and practices and materially misleading advertising.

80. Plaintiff and Class members were harmed and suffered injury as a result of Defendant's conduct. Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

81. Accordingly, Plaintiff and members of the Class seek damages including full

restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

**FOURTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability Pursuant to the**
**O.R.C. § 1302.27,** *et seq.*
**(Plaintiff Kurtz On Behalf of the Ohio Class)**

82.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

83.     Defendant is a merchant with respect to the Magnesium Glycinate Supplements.

84.     The Magnesium Glycinate Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class Members.

85.     An implied warranty that the Magnesium Glycinate Supplements were merchantable arose by operation of law as part of the sale of the Magnesium Glycinate Supplements.

86.     Defendant breached the implied warranty of merchantability in that the Magnesium Glycinate Supplements do not contain the amount of advertised magnesium derived from magnesium glycinate, do not provide the benefits associated with the warranted and advertised 420 mg of magnesium as magnesium glycinate, and thus were not in merchantable condition when Plaintiff and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

87.    Defendant has breached the implied warranty of merchantability because the Magnesium Glycinate Supplements when sold would not pass without objection in the trade.

88.    As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Glycinate Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

a.    An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

b.    An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c.    An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d.    An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e.    Reasonable attorneys' fees and costs;

f.    Pre-judgment and post-judgment interest, as provided by law;

g.    Such other and further relief as this Court deems just and proper.

### TRIAL BY JURY DEMANDED ON ALL COUNTS

25

Dated: June 18, 2024                                  PLAINTIFF, Anastasia Kurtz

By:     */s/ Sergei Lemberg*
         Sergei Lemberg
         LEMBERG LAW, LLC
         43 Danbury Road
         Wilton, CT 06897
         Telephone: (203) 653-2250
         Facsimile:   (203) 653-3424
         slemberg@lemberglaw.com
         *Attorneys for Plaintiff*